ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:25-MJ-552 |
| CHRISTOPHER BRANDON JUDGE (01)<br>RAQUELLE ANN JUDGE (02)<br>a/k/a RAQUELLE ANN FARR<br>a/k/a RAQUELLE ANN RENFRO | |

## CRIMINAL COMPLAINT

I, Michael Vizsolyi, a Special Agent with the Federal Bureau of Investigation ("FBI"), after being duly sworn, depose and state the following is true and correct to the best of my knowledge and belief:

<u>CONSPIRACY TO COMMIT WIRE FRAUD IN VIOLATION OF 18 U.S.C § 1349</u>

Starting in or about August 2020, and continuing until in or about January 2023, in the Fort Worth Division of the Northern District of Texas and elsewhere, Defendants **Christopher Brandon Judge** and **Raquelle Ann Judge (a/k/a Raquelle Ann Farr, a/k/a Raquelle Ann Renfro)**, did knowingly and willfully combine, conspire, confederate and agree with each other, to devise and execute a scheme to intentionally defraud victims and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, all done in violation of 18 U.S.C. §§ 1349 and 1343.

Criminal Complaint - Page 1

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since June 6, 2021. As an FBI Special Agent, I was assigned to the White-Collar Crime Squad with primary investigative responsibilities involving criminal matters particularly related to economic or white-collar crime since 2021. During my time as an investigator of white-collar crime, I investigated fraudulent schemes including investigations involving money laundering, wire fraud, and investment fraud schemes. During my tenure as an FBI Special Agent, I have participated in all the normal methods of investigation, including, but not limited to: electronic surveillance, visual surveillance, interviews of witnesses, the execution of search warrants, the use of confidential informants and cooperating witnesses, and the use and analysis of toll records. I am vested with the authority to investigate violations of Federal laws, including Title 18 and Title 26 of the United States Code.

2. The facts set forth presented are based upon my personal observations, my training and experience, and information obtained from other law enforcement agents, government agencies, and witnesses. Because this affidavit is being submitted for the limited purpose of supporting the issuance of a criminal complaint and arrest warrant for the defendants, I have not set forth in this affidavit everything I have learned from this investigation. Rather, I have set forth only those facts necessary to establish probable cause that a violation of federal law has been committed.

## THE CONSPIRACY AND SCHEME TO DEFRAUD

### The Object of the Conspiracy

3. The object of the conspiracy was for **Christopher Judge** and **Raquelle Judge**, collectively the defendants, by and through the entity Judge DFW, LLC ("Judge DFW"), to enrich themselves by advertising to the public that they performed various services as a one-stop shop for custom home construction and interior design, to include: real estate sales, interior design and custom home construction. To that end, the defendants:

    a. Caused Judge DFW Design and Build Contracts ("Contracts") to be executed by victims and defendants providing, among other things, the defendants would perform home construction projects in Texas for a fee;

    b. Collected money from victims as installment payments to fund projects;

    c. Failed to complete or meaningfully start those relevant projects; and

    d. Stopped work on relevant projects and spent the remainder of victims' money on personal living expenses such as legal fees, Amazon purchases, personal credit card payments, mortgage payments, and tuition, among other things.

### Manner and Means of the Conspiracy and the Scheme to Defraud

4. It was part of the scheme for **Christopher Judge** and **Raquelle Judge** to advertise their business, Judge DFW, using Facebook, Instagram, and TikTok posts and messages. The relevant posts and messages represented that they owned a custom home building and remodeling business. The defendants purported to offer architecture, construction,

and interior design/décor services, and falsely represented that **Christopher Judge** was an architect.

5.     It was part of the scheme that once a potential customer contacted Judge DFW and expressed interest in building a home or remodeling, **Christopher Judge** would submit a below-market bid for the project, promising completion within four to six months. Once the customer agreed to hire the defendants, the customer would sign a contract and pay the defendants in multiple installments via wire transfer or check, thus causing interstate wire transmissions.

6.     It was part of the scheme for the defendants to maintain a Chase business bank account to give the appearance that Judge DFW was a legitimate business. Many victims were instructed to wire installment payment money to the defendants' Chase business account. Any checks were made payable to the business and deposited into the business account. Once the victims' money was deposited, however, the defendants often transferred the money into other jointly-held Chase bank accounts and used the money to perpetuate the scheme and for personal living expenses, including luxury items.

7.     It was part of the scheme for the defendants to do partial work on the construction projects to induce the victims to continue to make installment payments on their agreements either by wire transfer or check. It was further part of the scheme for the defendants to make excuses and to assure the victims that problems and delays in construction would be corrected and that the project would be completed on time if the victims continued to make their installment payments.

8.  It was likewise part of the scheme for the defendants to fail to pay the subcontractors that they hired for the projects. And consistent with the nature of the scheme, the defendants often employed substandard subcontractors to do only minimal work.

9.  As a result, from at least in or about August 2020, and continuing until in or about January 2023, the defendants defrauded over 40 victims, who resided in six counties within the Northern District of Texas, in relation to at least 24 construction projects. The defendants' fraud caused a total loss of over $5.4 million.

*Background Information and Bank Accounts*

10. From on or about December 2018, through November 2020, **Raquelle Judge** worked as a licensed realtor at Business A in Southlake, Texas. She told her clients that she was also in the home design-décor business.

11. On or about August 7, 2020, **Christopher Judge** and **Raquelle Judge** formed Judge DFW as a limited liability company ("LLC") registered do business in Texas, with both defendants listed as its managing members. On November 11, 2020, the defendants were married. On or about June 24, 2022, Judge DFW forfeited its registration to do business in Texas as an LLC.

12. On or about October 2, 2020, the defendants opened Chase account x6359 ("the primary Justice DFW operating account"), in their names as a business checking account for Judge DFW. Both defendants were account signatories.

13. Defendants were also owners and signatories of several other Chase bank accounts, all opened between October 2, 2020, and June 1, 2021, including three

corporate accounts: the primary Justice DFW operating account, Chase account x1881, Chase account x1873; and three personal accounts: Chase account x7492, Chase account x0013, and Chase account x9523.

14. In May 2022, the Texas Board of Architecture issued a formal warning to **Christopher Judge** and Judge DFW informing them that they had violated the Texas Administrative Code by referring to Christopher Judge as an architect and describing the business as "Judge DFW Architecture" in representations to the public because neither the individual or the entity were properly registered as an architect or an architect business in Texas, respectively.

## PROBABLE CAUSE

### *The Victims*

14. The defendants solicited clients for architectural and home construction services on the internet through Facebook, Instagram, and Tik Tok, and by word of mouth. The defendants told relevant victims, often in emails or text messages, that they were a one-stop-shop for custom home building, purporting to offer architecture, construction, and interior design/décor services, and falsely represented that **Christopher Judge** was an architect.

15. For example, during 2020, the defendants advertised their services on the "Alliance Working Moms" and "Moms of Southlake" Facebook pages, as shown below:



16. During the relevant time period, **Christopher Judge** advertised as **chrisjudge@judgedfw** and stated that he was as an architect, realtor, and builder, as shown below:



17. Between on or about the dates shown in the chart below, the defendants entered Contracts with each of the victims shown in the chart below, after having falsely represented to the victims that they were a full service architectural, construction, and interior design firm. The defendants started each of the construction projects listed in the chart below and accepted multiple installment payments but never completed them, as shown in the chart below. For example:

| Victims | Location of Relevant Project in Texas | Approx. Contract Date | No. of Installment Payments | Approx. Date Defendants Stopped Working on Project | Approx. Total Amount of Payments to Defendants |
|---|---|---|---|---|---|
| Individual L1 & Individual L2 | Van Alstyne | 12/28/21 | 7 | 6/2021 | $255,460 |
| Individual K1 & Individual K2 | Stephenville | 3/14/21 | 2 | 4/2022 | $52,000 |
| Individual R & Individual S | Justin | 6/16/21 | 9 | 9/2022 | $262,240 |
| Individual U1 | Cleburne | 11/17/21 | 6 | 8/2022 | $198,510 |
| Individual Y1 & Individual Y2 | Euless | 4/1/21 | 7 | 12/23/21 | $198,000 |

| Individual Z1 & Individual Z2 | Decatur | 11/15/21 | 12 | 11/2022 | $364,310 |

18. For each relevant project, typically defendants would secure money from victims, as follows:

    a. **Raquelle Judge** scheduled a meeting between the victims and both defendants;

    b. During the meeting, **Raquelle Judge** explained the construction and design contract, that a $10,000 deposit was required, and **Christopher Judge** and the victims executed the Contract; and

    c. **Raquelle Judge** emailed the signed contracts to the victims for their records.

19. Once the relevant victims paid an initial deposit to the defendants via check or wire transfer, **Christopher Judge** prepared architectural plans and presented them to the victims. The parties agreed on any changes to the plans. After the architectural plans were finalized, **Raquelle Judge** helped the victims select the design materials and determine costs. To that end, **Raquelle Judge** sent photos and price sheets to the victims.

20. At some point each relevant victim began to question project delays and incompletion. **Christopher Judge** made excuses for delays in phone calls and text messages, telling the victims that continued installment payments would move the projects along.

21. With respect to additional projects (not listed in the chart above) where victims were defrauded, the defendant followed the same general pattern of conduct. For each

Criminal Complaint - Page 9

project, the defendants submitted a bid that was substantially lower than others received by the victim. The defendants and additional victims then entered a contract, the victims made installment payments to the primary Justice DFW operating account, the defendants never completed (or meaningfully started) any of the projects, and the defendants ceased communications with the victims after substantial contract payments were made to the defendants.

*Disposition of Funds*

22. From October 2020, to January 2023, as part of the scheme, the defendants deposited approximately $6.1 million into the primary Justice DFW operating account.

23. As part of the scheme, the defendants comingled victims' installment payments into the primary Justice DFW operating account. Frequently, money from victims' installment payments were used by defendants to purchases construction materials for unrelated client construction projects.

24. From October 2020, to January 2023, as part of the scheme, The defendants spent over approximately $865,000 of Justice DFW installment payments on their own personal living expenses, including payments of the approximate amounts listed below:

   a. $285,000 on payroll payments to defendants;

   b. $133,000 on cash withdrawals;

   c. $82,000 on purchases through Amazon.com;

   d. $70,000 on civil legal fees and other lawsuit costs;

   e. $27,000 on personal mortgage payments;

   f. $10,000 on plastic surgery; and

 g. $10,000 on purchases at Wal-Mart.

25. As a result of the scheme, **Christopher Judge** and **Raquelle Judge** fraudulently obtained approximately $4.8 million dollars from over 40 victims on at least 24 construction projects, none of which the defendants completed, or intended to complete.

26. During the course of the scheme, moreover, both **Christopher Judge** and **Raquelle Judge** received a total of 424 citations from code enforcement for city violations on projects they were working on in Runaway Bay, which is in Wise County, Texas.

### CONCLUSION

Based on the above facts and circumstances, I respectfully submit there is probable cause to believe **Christopher Judge** and **Raquelle Judge** knowingly conspired to commit wire fraud.

Michael Vizsolyi, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence on this 11th day of August at 1:29 p.m., in Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE